IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TERRY GORDON HOFFMAN,

   **Plaintiff,**

**v.**          **Case No.: 2:20-cv-00696**

KILOLO KIJAKAZI,
**Acting Commissioner of the**
**Social Security Administration,**

   **Defendant.**


## PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable Irene C. Berger, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are Plaintiff's Brief in Support of Judgment on the Pleadings and the Commissioner's Brief in Support of Defendant's Decision, requesting judgment in her favor. (ECF Nos. 19, 20).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's request for judgment on the pleadings be **DENIED**; the Commissioner's request for judgment on the

pleadings be **GRANTED**; the Commissioner's decision be **AFFIRMED**; and this case be **DISMISSED** and removed from the docket of the Court.

## I.   <u>Procedural History</u>

In July 2018, Terry Gordon Hoffman ("Claimant") protectively filed for DIB and SSI, alleging a disability onset date of December 19, 2017 due to "coronary artery disease, acid reflux, anxiety, diverticulosis, sever[e] lower back pain, cervical disk disease, GERD, rosacea, and ribs." (Tr. at 15, 290). After his applications were denied at the initial and reconsideration levels of review, Claimant requested an administrative hearing, which was held before the Honorable Melinda Wells, Administrative Law Judge ("the ALJ") on January 13, 2020. (Tr. at 34-68). By written decision dated February 4, 2020, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 12-32). The ALJ's decision became the final decision of the Commissioner on August 26, 2020 when the Appeals Council denied Claimant's request for review. (Tr. 1-6).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing Claimant's Complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 10, 11). Claimant filed a Brief in Support of Judgment on the Pleadings, and the Commissioner filed a Brief in Support of Defendant's Decision. (ECF Nos. 19, 20). The time period within which Claimant could file a reply to the Commissioner's response expired. Consequently, the matter is fully briefed and ready for resolution.

## II.   <u>Claimant's Background</u>

Claimant was 50 years old on his alleged onset date and 53 years old on the date of the ALJ's decision. (Tr. at 86). He communicates in English, earned an associate degree in electronic engineering, and previously worked as a grocery store owner and purchasing

agent/bid writer. (Tr. at 39, 64, 289).

## III.   <u>Summary of ALJ's Decision</u>

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent

3

the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d. 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b), 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* §§ 404.1520a(d), 416.920a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the

4

impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through December 31, 2022. (Tr. at 17, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since December 19, 2017, the alleged disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: degenerative disc disease of the cervical and lumbar spine and coronary artery disease. (*Id.*, Finding No. 3). The ALJ also considered Claimant's left shoulder pain, GERD, Barrett's esophagus, colitis, rosacea, obesity, and anxiety, but concluded that the impairments were non-severe. (Tr. at 18-20).

The ALJ noted that Claimant also alleged breathing problems at night, but there was no indication that he expressed the complaint to a provider or received any treatment or medical diagnosis for the issue. (Tr. at 20).

Under the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 20-21, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He should avoid more than occasional exposure to temperature extremes and vibration; and never work at unprotected heights or around moving machinery.

(Tr. at 21-25, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could perform his past relevant work as a grocery store owner and purchasing agent. (Tr. at 25-26, Finding No. 6). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 26, Finding No. 7).

**IV.   Claimant's Challenge to the Commissioner's Decision**

Claimant asserts a single challenge to the Commissioner's decision. He argues that the ALJ's evaluation of his treating physician's opinion is not supported by substantial evidence. (ECF No. 19 at 9-14). In response, the Commissioner contends that Claimant has not proven that he is disabled, and substantial evidence supports the ALJ's determination that the opinion was not persuasive. (ECF No. 20 at 9-16).

**V.   Relevant Evidence**

The undersigned has reviewed all of the evidence before the Court. The information that is most pertinent to Claimant's challenge is summarized as follows:

6

### A. Treatment Records

Claimant presented as a new patient to internist Stephen Roy, M.D., on October 5, 2017. (Tr. at 464). Claimant advised Dr. Roy that he was treated by a cardiologist for coronary artery disease and a stent was placed in his heart when he was in his thirties, and he noted that he received treatment for chronic pain at a pain center but was "doing well right now." (*Id.*). On January 24, 2018, Pamela Rice-Jacobs, FNP-BC, examined Claimant, who reported that his neck pain was "good" some days, but sometimes he could not get out of bed. (Tr. at 517). He conceded that he was doing well after receiving trigger point injections in July. (*Id.*). When Claimant followed up with Dr. Roy on April 5, 2018, his diagnoses included abdominal bloating, coronary artery disease, and shortness of breath. (Tr. at 453). However, Dr. Roy recorded normal cardiovascular and pulmonary findings, including no increased respiratory effort or signs of respiratory distress, clear lungs to auscultation, and normal heart rate and rhythm. (Tr. at 452). Dr. Roy also did not find any musculoskeletal abnormalities and documented normal gait, station, range of motion, stability, and muscle strength/tone. (*Id.*).

Claimant received additional trigger point injections from Nurse Rice-Jacobs on April 6, 2018. (Tr. at 669). However, Claimant did not see Nurse Rice-Jacobs again until on July 27, 2018 because he "lost [his] insurance" and was now on Medicaid. (Tr. at 525). He noted that his cervical and lumbar facet radiofrequency rhizotomies in May and December 2016, respectfully, relieved his pain by at least 75 percent. (*Id.*). Nurse Rice-Jacobs requested authorization to repeat the rhizotomies and perform additional trigger point injections. (Tr. at 526). She administered trigger point injections for myofascial pain syndrome on August 3, 2018. (Tr. at 527).

On August 22, 2018, Claimant underwent a left heart catherization due to

accelerated angina/Canadian Cardiovascular Society (CCS) grade III angina, and two stents were placed.[1] (Tr. at 553-55). His cardiologist recommended Aspirin, Brilinta, and aggressive risk factor modification. (Tr. at 555). Claimant advised Dr. Roy on August 31, 2018 that he had less symptoms since the stents were placed in his heart, but he still suffered shortness of breath when walking up stairs. (Tr. at 550). Dr. Roy recorded normal pulmonary, cardiovascular, and musculoskeletal examinations. (Tr. at 553).

Claimant underwent a lumbar facet rhizotomy at the Cabell Huntington Hospital Pain Relief Center on September 11, 2018, and Nurse Rice-Jacobs administered trigger point injections on September 25, 2018. (Tr. at 560, 616-17). On October 9, 2018, Claimant reported to Nurse Rice-Jacobs that tramadol did not really alleviate his back pain, trigger point injections relieved his neck pain 50 percent, and the lumbar facet rhizotomy was ineffective. (Tr. at 620). Claimant stated that he tried to be active, stretch, and walk in a home exercise program, but he has trouble even walking to the mailbox. (*Id.*). On examination, Claimant complained of spinal tenderness, but his gait was non-antalgic, he had normal respiratory and cardiovascular examinations, and his neurological functions were intact. (Tr. at 619). Nurse Rice-Jacobs ordered radiological tests and prescribed medications. (Tr. at 621).

On October 30, 2018, Claimant again advised Nurse Rice-Jacobs that the trigger point injections in his neck provided 50 percent relief, but the injections in his back only helped for one day, and he still had no relief from lumbar rhizotomy. (Tr. at 626). Claimant said that past rhizotomies always helped his neck pain. (*Id.*). Claimant followed up with Dr. Roy on November 13, 2018, who found no signs of increased respiratory effort

---

[1] Grade III angina pectoris is defined by "[m]arked limitation of ordinary physical activity" and it "occurs when walking 100-200 meters or climbing 1 flight of stairs at a normal pace in normal conditions." https://empendium.com/mcmtextbook/table/B31.2.5-1.

or respiratory distress. (Tr. at 798). Claimant's lungs were clear to auscultation, he did not have any edema and/or varicosities, and his heart rate and rhythm, gait and station, and inspection of joints, bones, and muscles were all normal. (*Id.*). Claimant's lumbar MRI on November 30, 2018 showed degenerative changes that were most prominent at L4-5, and Claimant had lesions at that level which were most likely synovial cysts. (Tr. at 777). Claimant's cervical x-ray indicated degenerative changes but no evidence of instability. (Tr. at 779).

Claimant received additional trigger point injections on December 20, 2018 and January 17 and February 14, 2019.  (Tr. at 760, 767-68, 773-74). His repeat lumbar MRI on January 11, 2019 showed synovial cysts and degenerative changes at L4-5, which was producing severe spinal stenosis (Tr. at 770). Thus, on January 30, 2019, Claimant presented to neurosurgeon Nicolas Phan, M.D. His body mass index was 35.3, but he had good motor function in his lower extremities, could stand on his tip toes and heels, and had negative straight leg raising tests bilaterally. (Tr. at 764). Dr. Phan recommended physical therapy and medication for Claimant's back pain. (Tr. at 765). Claimant told his physical therapist on February 27, 2019 that he cleaned out his dogs' kennels one at a time due to lumbar and hip pain. (Tr. at 999). However, he reported to Nurse Rice-Jacobs on March 1, 2019 that he felt good the past week. (Tr. at 756). Nurse Rice-Jacobs again noted tenderness in Claimant's spine, but non-antalgic gait, normal respiratory and cardiovascular examinations, and intact neurological functions. (Tr. at 757-58). Claimant reported that trigger point injections provided 60 to 70 percent pain relief. (Tr. at 758).

Claimant followed up with Dr. Phan on March 21, 2019. Dr. Phan noted that, although some of Claimant's back pain could be due to severe stenosis from cysts and grade 1 spondylosis, the chance of improving his back pain with surgery was not greater

9

than 50 percent , and surgical intervention could potentially worsen his back pain. (Tr. at 753). Therefore, Dr. Phan concluded that, since Claimant did not have significant leg symptoms, he should continue on medical monitoring and return if his symptoms worsened. (*Id.*).

Claimant told Nurse Rice-Jacobs on March 28, 2019 that he had balance issues for two months. (Tr. at 746). He admitted that he had not fallen, but he claimed that he had some close calls. (*Id.*). Claimant received additional trigger point injections on April 24, 2019 and a cervical facet nerve block on May 8, 2019. (Tr. at 740-41, 744-45). On May 17, 2019, Claimant presented to George McKay, M.D, reporting low blood pressure, and he stated that he was sleeping more than usual. (Tr. at 919). His blood pressure was 105/77. (*Id.*). Claimant was morbidly obese, but he was ambulating normally with normal gait and station. (Tr. at 920-21). Dr. McKay recorded normal cardiovascular and musculoskeletal findings, including normal muscle strength and tone and movement of all extremities, as well as normal neurological findings, including intact sensation and reflexes. (Tr. at 921). He diagnosed Claimant with lightheadedness and "at risk polypharmacy." (*Id.*). Dr. McKay ordered an electrocardiogram, glucose test, and urinalysis. (*Id.*).

When Claimant followed up with Dr. Roy on May 31, 2019, he complained of left shoulder pain, but Dr. Roy noted that Claimant had not tried physical therapy. (Tr. at 734). He related that he recently fell, but his lab testing and EKG were normal, and he slept for one and one-half days and felt better. (*Id.*). Claimant's resistant left shoulder raise was painful, but he had otherwise normal respiratory, cardiovascular, and musculoskeletal findings, including normal gait, station, and muscle strength/tone. (Tr. at 738).

On June 12, 2019, Claimant underwent a cervical facet nerve block for spondylosis

without myelopathy. (Tr. at 730-31). Shortly thereafter, on July 24, 2019, he presented for an initial physical therapy evaluation for left shoulder pain. He stated that the pain was chronic for 19 years, but it increased two months earlier "for no apparent reason." (Tr. at 728). Claimant asserted that he was attempting to use a cordless drill three days earlier and experienced a sharp pain in his left deltoid region. (*Id*.). Claimant received a cervical facet rhizotomy for cervical spondylosis on August 13, 2019. (Tr. at 724-25). He provided "disability paperwork" for Dr. Roy to complete on December 13, 2019. (Tr. at 1139). At that visit, Claimant told Dr. Roy that he continued to fall, and Dr. Roy noted "imbalance" in Claimant's musculoskeletal examination. (Tr. at 1139, 1142).

### B. Opinions and Prior Administrative Findings

On August 28, 2018, state agency physician Pedro F. Lo, M.D., assessed Claimant's RFC based upon his review of Claimant's records. Dr. Lo found that Claimant could perform light exertional work with occasional postural activities, but no concentrated exposure to temperature extremes, vibration, or hazards. (Tr. at 93-95, 105-07). Amy Wirts, M.D., affirmed Dr. Lo's RFC assessment on January 4, 2019. (Tr. at 121-23, 135-37).

On December 13, 2019, Dr. Roy noted in Claimant's chart that Claimant could not adequately perform job duties due to physical limitations secondary to obstructive coronary artery disease, degenerative disc disease in the cervical and lumbar spine, inflammation of the supraspinatus region, and chronic shoulder and back pain. (Tr. at 1143). Dr. Roy stated that he prescribed physical therapy for Claimant's ailments, which had little to no effect on Claimant's functional abilities. (*Id*.). On the same date, Dr. Roy completed a medical source statement of ability to do work-related activities form. He opined that Claimant could occasionally lift ten pounds and stand and/or walk for less

than two hours in an eight-hour workday; must periodically alternate between sitting and standing; had limited ability to push and pull with his extremities; could occasionally climb, but could never balance, kneel, crouch, crawl, or stoop; and had limited ability to reach, handle, and feel. (Tr. at 1093-95).

### C. Claimant's Testimony

Claimant testified during his administrative hearing on January 13, 2020 that he could not work due to back and neck issues. (Tr. at 41-42). He said that he could walk to take the trash out and come back in, but that was "about it." (Tr. at 42). Claimant testified that he drove to the store, but could not incline at all, and he had to rest his head on something when sitting because his neck hurt so much. (Tr. at 39, 42). Claimant noted that his back pain did not radiate into his legs. (Tr. at 43). However, he stated that he had pain in his left shoulder and toes, as well as acid reflux. (Tr. at 44-45)

## VI.  __Standard of Review__

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This Court is not charged with conducting a *de novo* review of the evidence. Instead, the Court's function is to scrutinize the record and determine whether it is adequate to

support the conclusion of the Commissioner. *Hays*, 907 F.2d at 1456. When conducting this review, the Court does not re-weigh evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001) (citing *Hays*, 907 F.2d at 1456)). Moreover, "[t]he fact that the record as a whole might support an inconsistent conclusion is immaterial, for the language of § 205(g) ... requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock*, 483 F.2d at 775 (citations omitted). Thus, the relevant question for the Court is "not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig*, 76 F.3d at 589).

## VII.   <u>Discussion</u>

Claimant argues that the ALJ ignored his "uncontested" physical functional limitations and treating source opinion evidence. (ECF No. 19 at 9). Specifically, Claimant asserts that there was "no rational basis for disregarding" the opinion evidence from his primary care physician, Dr. Roy. (*Id.* at 14). SSR 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the ***most*** that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id.* According to the Ruling, the

ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3.

The functions which the ALJ must assess include a claimant's physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); mental abilities, such as understanding, remembering, and carrying out instructions and responding appropriately to supervision, coworkers, and work pressures in a work setting; and other abilities, such as seeing and hearing. 20 CFR §§ 404.1545(b)-(d), 416.945(b)-(d)

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4. In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7.

While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

Claimant protectively filed his applications for benefits in July 2018. (Tr. at 15). Thus, the revised regulations regarding opinion evidence, which apply to claims filed on or after March 27, 2017, govern Claimant's applications. Under the revised regulations, the ALJ must evaluate the persuasiveness of all medical opinions, which are defined as the following:

> [A] statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. §§ 404.1513(a)(2), 404.1520c, 416.913(a)(2), 416.920c.

The regulatory factors that the ALJ must consider when evaluating medical opinions include supportability; consistency; relationship of the source to the claimant; length, purpose, and extent of treatment relationship; frequency of examinations; whether the source examined the claimant; the source's specialization; and other factors. *Id*. at §§ 404.1520c(c), 416.920c(c). The supportability and consistency of the opinions

are of primary importance. The ALJ must articulate his or her consideration of the factors of supportability and consistency, but the ALJ is not required to explain how he or she considered the other regulatory factors. *Id*. at §§ 404.1520c(b)(2), 416.920c(b)(2).

The term "supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1). Furthermore, the law explains that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s)" are. *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

In this case, the ALJ considered Dr. Roy's opinions, but correctly noted that she could not defer or give any specific evidentiary weight to the medical opinions and prior administrative findings in the record. (Tr. at 24). The ALJ found that Dr. Roy's assessment of Claimant's functional abilities and his statement that Claimant could not perform job duties were not supported by the overall objective medical evidence and inconsistent with Claimant's stable coronary artery disease and conservative treatment for back and neck pain. (Tr. at 25). The ALJ noted that Claimant's physical examination findings were normal except for facet tenderness, including normal neurological functions and strength. (*Id*.). Further, the ALJ cited that "no surgery has been recommended" for Claimant's back and neck issues, and Claimant's activities included caring for his personal needs, driving, sweeping without pain, shopping for groceries,

cleaning dog kennels, using a cordless drill, and lifting items into a hay trailer. (*Id.*). For those reasons, the ALJ found that Dr. Roy's opinions were unpersuasive. (*Id.*).

Claimant indicates that the ALJ's decision is "devoid of any evidence refuting" Dr. Roy's RFC opinion other than the "paper reviews" performed by state agency physicians, Dr. Lo and Dr. Wirts. (ECF No. 19 at 9-10). Claimant takes issue with the fact that Dr. Lo and Dr. Wirts did not consider any treating source opinions and further states that the prior administrative findings are "out of step" with the comprehensive medical record. (ECF No. 19 at 10). Indeed, Dr. Lo and Dr. Wirts did not consider any treating source opinions because there were not any in the record. Claimant did not give his physician the disability paperwork until December 2019, and the state agency physicians reviewed the record and made their administrative findings in August 2018 and January 2019. (Tr. at 95, 107, 123, 137, 1139). There was no indication that there was a medical opinion from any source at the time of their review. (Tr. at 95, 107, 123, 137). Nonetheless, Dr. Lo and Dr. Wirts considered treatment records from Dr. Roy, as well as Claimant's pain management and cardiology records. (Tr. at 90-91, 102-03, 117-18, 131-32). The physicians specifically considered Claimant's limitations related to back and neck pain; treatment, including rhizotomies and trigger point injections; and coronary artery disease requiring stents. (Tr. at 95, 107, 119, 123, 133, 137). Therefore, any insinuation that Dr. Lo and Dr. Wirt's prior administrative findings lacked supportability is without merit.

Furthermore, the ALJ's evaluation of the persuasiveness of the opinions and prior administrative findings is supported by substantial evidence. As the ALJ explained, the limitations assessed by the state agency physicians, in contrast to the extreme limitations ascribed by Dr. Roy, were consistent with Claimant's stable heart condition, conservative back and neck treatment with no recommendation for surgery, largely normal

examination findings, and activities of daily living. (Tr. at 24, 25). As reflected in the medical records, Claimant saw neurosurgeon, Dr. Phan, in January 2019, and Dr. Phan did not recommend back or neck surgery. (Tr. at 764-65). Likewise, in March 2019, Dr. Phan concluded that since surgery could exacerbate the problem and Claimant did not have significant leg symptoms, he should be medically monitored and return for reevaluation if his condition worsened. (Tr. at 753). Moreover, even as late as May 2019, Claimant did not have any issue ambulating and had normal cardiovascular findings, muscle strength and tone, movement of all extremities, sensation, and reflexes. (Tr. at 738, 921). He noted that he recently fell, but his lab tests and EKG were normal, he slept for one and one-half days, and then felt better. (Tr. at 734). Claimant exacerbated his left shoulder pain in July 2019 using a cordless drill. (Tr. at 728). He reported balance issues, which Dr. Roy noted in his December 2019 visit. (Tr. at 1139, 1142).

As the Commissioner aptly noted, Dr. Roy opined that Claimant could stand and walk for less than two hours, which was inconsistent with Dr. Roy's own treatment notes reflecting normal gait, station, muscle strength, and muscle tone. (Tr. at 452, 467, 553, 738, 798, 1093). Additionally, Dr. Roy claimed that Claimant could not perform any job duties, in part, due to obstructive coronary artery disease, yet Dr. Roy recorded normal cardiovascular and pulmonary findings during Claimant's physical examinations. (Tr. at 452, 467, 553, 738, 798, 1143). Overall, the medical records substantiate the ALJ's assessment that while Claimant had some exertional, postural, and environmental limitations, he was not as limited as Dr. Roy concluded.

Claimant asserts other supposed errors in the ALJ's decision. For instance, he contends that the ALJ incorrectly stated that surgery was not recommended for his back or neck even though "it is well documented that an ACDF cervical fusion was performed

18

on his neck." (ECF No. 19 at 10-11). However, the ALJ considered Claimant's neck surgery, which occurred in 2003, long before Claimant's December 2017 alleged onset date. (Tr. at 23). Claimant does not identify any evidence that back or neck surgery was recommended during the relevant period.

Claimant further disputes the ALJ's conclusion that his medical treatment for back and neck issues was "conservative." He notes that he received many trigger point injections, which were ineffective, necessitating a facet radiofrequency rhizotomy, and he was prescribed high-dose opioids. (ECF No. 19 at 11). Yet, the ALJ thoroughly considered such treatment, thoroughly discussing Claimant's prescriptions for Talwin and later tramadol, trigger point injections, and rhizotomy. (Tr. at 23).

Although there is no regulatory definition of "conservative" medical treatment, it is often considered treatment less invasive than surgery. *Guy M. v. Saul*, No. 3:19-CV-00071, 2021 WL 805527, at *7 n.8 (W.D. Va. Mar. 2, 2021), *report and recommendation adopted sub nom. Merritt v. Saul,* 2021 WL 1082488 (W.D. Va. Mar. 18, 2021) (collecting cases). The Fourth Circuit has found that an ALJ improperly concluded that a claimant's treatment was conservative when procedures such as nerve blocks and ablation preceded surgical intervention. *See, e.g., Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) ("Lewis' multiple medical conditions require her to take powerful analgesics, including Fentanyl and Oxycodone. Furthermore, Lewis endured multiple surgeries, one of which required removal of her first left rib to alleviate pain. Before those surgeries, Lewis underwent a lumbar epidural injection, two supraspinatus nerve blocks, and a radiofrequency ablation of her supraspinatus nerve. In light of the extensive treatment Lewis received for her various conditions, the ALJ's designation of Lewis' course of

treatment as 'conservative' amounts to improperly 'playing doctor' in contravention of the requirements of applicable regulations.").

However, the ALJ in this case did not violate the Fourth Circuit's precedent by describing Claimant's medical treatment as conservative. The ALJ documented her consideration of the various treatments that Claimant received and correctly noted that surgery was not recommended for his conditions during the relevant period. Therefore, although Claimant might disagree that he was treated conservatively, the ALJ did not commit legal error in making that finding. *See, e.g., Jason*, 2020 WL 5578969, at *8 (citing that epidural injections, medication, physical therapy, and radiofrequency ablation were determined to be conservative treatment); *Cf. Guy M. v. Saul*, No. 3:19-CV-00071, 2021 WL 805527, at *7 n.8 (W.D. Va. Mar. 2, 2021), *report and recommendation adopted sub nom. Merritt v. Saul,* 2021 WL 1082488 (W.D. Va. Mar. 18, 2021) (finding that the ALJ's characterization of treatment, which included two back surgeries and a total hip replacement, as "routine, conservative, and unremarkable" was erroneous).

Overall, the ALJ properly evaluated the persuasiveness of the prior administrative findings and medical opinions in accordance with applicable regulations, and her analysis is supported by substantial evidence in the record. Claimant relies on a prior version of regulatory law, stating that Dr. Roy's opinions were entitled to controlling weight. (ECF No. 19 at 10). Claimant correctly notes that the regulations were revised, but inaccurately states that the substantive language has not changed. (*Id.* at 10 n.1). As discussed, the regulations were drastically revised, including the fact that treating source opinions are no longer entitled to controlling weight. Claimant does not identify any errors in the RFC analysis that trigger remand of the ALJ's decision. For the above reasons, the undersigned

**FINDS** that the ALJ's evaluation of Claimant's physical limitations complied with applicable rulings and regulations and is supported by substantial evidence.

## VIII. **Recommendations for Disposition**

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 19); **GRANT** the Commissioner's request for judgment on the pleadings, (ECF No. 20); **AFFIRM** the decision of the Commissioner; **DISMISS** this action, with prejudice, and remove it from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Thomas v. Arn*, 474 U.S. 140 (1985); *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party,

Judge Berger, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED**: October 15, 2021

Cheryl A. Eifert
United States Magistrate Judge